UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:23-CR-361-WFJ-CPT

STEPHEN JAY THORN

## UNITED STATES' SENTENCING MEMORANDUM

Based on the significant increase in threats against federal judges, and, more generally, against federal officials, and the serious and urgent need for deterrence, the United States respectfully requests that the Court sentence the defendant, Stephen Jay Thorn, to a meaningful term of imprisonment. A sentence within the Sentencing Guidelines range of 24-30 months is sufficient, but not greater than necessary, to achieve the goals of sentencing and to provide adequate deterrence against future criminal conduct.

**I.     BACKGROUND**

   **a.  Facts**

On October 24, 2022, THORN read an article from an online news website about a judicial opinion. THORN was unhappy with the opinion and made five calls from his phone number, (904) 673-9526, to the Chambers of a United States District Judge in Orlando, Florida and left five voicemail recordings at approximately 12:53 p.m., 12:57 p.m., 1:04 p.m., 3:47 p.m. and 3:51 p.m. that, taken in their entirety, constitute a true threat to injure the person of another. When dialing each of the calls,

THORN dialed *67 in order to mask his identity. The five voicemail recordings are transcribed here:

1) "Listen, you redneck cunt bitch, you're just showing your true colors, playing to Trump who appointed you and to DeSantis. You have no fucking idea what LGBTQ kids go through. I'm a retired teacher. I've taught in Florida. I've taught in California. I have seen the sheer hell those kids are put through and you have the gall to say that that's part of middle school or high school is to be picked on. You should not be a judge. You're a heartless rotten piece of shit and you're showing your true colors you're playing to Trump's base and to DeSantis. You are fucking embarrassment to the judicial system. You need to resign you fucking skag."

2) "You rotten piece of shit, crooked piece of shit. Let's see how you would like it if somebody endangered your children in school or your grandchildren in school. You are an embarrassment to the judicial system. Again, maybe that's not a bad idea, Tit for tat. Those poor kids suffer so much, the LGBTQ kids. You have no concept of reality, maybe we need to make sure your children or grandchildren have to face the same flight. You rotten piece of shit. It's so obvious you're playing to Trump's base because Trump appointed you. Political payback, huh? You crooked bitch."

3) "Listen, you cunt. It's so easy to find personal information now. I see that you and your husband [VICTIM 2] live in [redacted city name] with your two children. You want to make LGBTQ kids suffer, because you're a fucking patsy for Trump and DeSantis? Maybe the same needs to happen to your kids. I'm not saying it will be me, although I am familiar with [redacted city name] and [redacted city name], but I would say you need to be very careful. When you hurt other children like that, innocent children, just because of your fucking allegiance to Trump and DeSantis. Tit for tat, just remember that— an eye for an eye—you stupid bitch."

4) "Listen, cunt, again, I'm not vicious or mean, I'm not vicious like you, hurting the whole community of thousands of LGBTQ kids who are already vulnerable and then they're now being even more vulnerable. You're basically giving a green light for them to be thought of as second-class citizens and bullied. And your stupid comments that middle school kids get bullied everywhere - Let's see if that happens with [VICTIM 3] and [VICTIM 4], you fucking dumbass. [redacted partial address], very easy to track you down. Now, I'm not threatening you because I'm not like that, but putting your number, your name, your address, your kids' names, your husband's name – that's public knowledge, bitch. You're paid by us, U.S. taxpayers, the Florida taxpayers, for that matter. So, what goes around, comes around. You're a heartless, cold-hearted cunt and you're just Trump's pawn and you're playing in to what DeSantis wants. You don't think that people see you for what you are. Fucking sellout, hurting all those kids. Just remember what goes around comes around. Again,

I'm not threatening you, but I do know many people that aren't very happy with what you did."

5) "This is for that stupid redneck, cunt, judge, [VICTIM 1]. You are a cruel person. You think that its okay for LGBTQ kids to be bullied, which is what that law is allowing, that's what it's saying that they're second-class citizens. Listen dumbass, you're easy to track you down. You have 2 kids, [VICTIM 3] and [VICTIM 4], and you're married to a man named [VICTIM 2], and your address is [redacted address] in [redacted city name]. I'm not a vindictive person and I wouldn't hurt anyone just like you've hurt a whole community, thousands of LGBTQ kids in the state of Florida, a state of 22 million people, you fucking vicious cunt."

At the time that he left these voicemails, THORN had the intent to communicate a true threat and knew that the voicemails would be viewed as a true threat.

The judge's career law clerk listened to the voicemails, notified the judge and contacted the United States Marshals Service to report the threat. The law clerk feared not only for the safety of the family of the District Court Judge, but also her own family and the family that was then living at the address that THORN had referenced in the voicemails.

Phone records revealed that THORN's cellphone number was the phone number that initiated all five calls, and further that the caller had used *67 in an attempt to mask his identity. The records also revealed that THORN's address in Pensacola, Florida, was the address associated with the phone number used to make the calls. Phone records revealed that each of the voicemails were routed through either California or Virginia enroute to the U.S. District Court Judge's Chambers in Orlando, Florida.

On October 31, 2022, at approximately 2:05 p.m., Deputy United States

Marshals, working with local law enforcement, conducted an interview of THORN at his residence. After initially denying his involvement, THORN later admitted that he had made the threatening calls and explained that he was angry about an opinion that the judge had authored.

### b. Procedural History

On September 6, 2023, a Grand Jury in Orlando, Florida indicted the defendant on two counts related to the calls: one count of Interstate Transmission of a Threat to Injure, in violation of 18 U.S.C. §875(c), and one count of Harassing Telephone Calls in Interstate Communications in violation of 47 U.S.C. §223(a)(1)(C).

Exactly two weeks later, the defendant was arraigned.

On October 10, 2023, the defense moved the court to transfer the case to the Tampa division due to a potential conflict of interest. The government did not oppose the motion and the case was transferred to the Tampa division.

On January 4, 2024, the former defense counsel filed the Defendant's Motion to Transfer to Another District and a Motion to Withdraw as Counsel.

Later that month, on January 30, 2024, the defendant's counsel filed a Motion to Withdraw Document, seeking to withdraw the Motion to Transfer to Another District, and requesting to keep the case in the Middle District of Florida.

On April 11, 2024, a signed Plea Agreement was filed.

On May 13, 2024, the defendant pleaded guilty to Count One of the Indictment before U.S. Magistrate Judge Christopher P. Tuite. Later that month, on May 29, 2024, U.S. District Judge William F. Jung adjudicated the defendant guilty as to Count

One of the Indictment.

The Probation Officer has determined that the appropriate sentencing guideline range is 24 to 30 months, based on an adjusted total offense level of 17 and a criminal history category of III. PSR ¶ 77.

## II.  SECTION 3553(a) FACTORS

In sentencing the defendant, the Court must take into account the factors set forth in 18 U.S.C. § 3553(a), as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
        (I) issued by the Sentencing Commission ....; and
        (II) that, ... are in effect on the date the defendant is sentenced; …

(5) any pertinent policy statement—
    (A) issued by the Sentencing Commission … and
    (B) that, ... is in effect on the date the defendant is sentenced.
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### III.   SENTENCING ARGUMENT

The defendant's criminal conduct in this case represents an affront to the judicial system. The defendant's choice to threaten violence when confronted by a ruling with which he disagreed, shows a lack of self control and a lack of respect, not just for the opinion issued by a U.S. District Court Judge, but, for the rule of law, more generally.

In this case, it is particularly crucial that the sentence imposed "reflect[s] the seriousness of" the offense and "afford[s] adequate deterrence to criminal conduct." 18 U.S.C. § 3552(a)(2)(A), (B).

In order to properly evaluate the need for both specific and general deterrence, it is important to consider the context in which this threat was sent. Threats against federal court judges are on the rise. On February 14, 2024, the U.S. Marshals Service Director Ronald Davis testified before a United States House Judiciary Subcommittee. During his statement, Director Davis explained that,

> The number of verified threats against federal judges has doubled in the last three years. We are currently facilitating more protective details to fulfill our obligations than we have in recent history, and the increase is impacting other important work across the agency. The likely outlook of potential threats and violence in the United States suggests a worsening trend.[1]

The country is becoming more ideologically divided. As a result, many judicial opinions are viewed as more controversial from one point of view or another. Rather

---

[1] Oversight of the U.S. Marshals Service: Hearing before U.S. House of Rep. Comm. On the Judiciary, Subcomm. on Crime and Fed. Gov't Surveillance 118 Cong. (2024) (Statement of Ronald Davis, Director, U.S. Marshals Service).

6

than criticize the court opinions with which they disagree, Americans are becoming more likely to criticize the judges who authored them. Unfortunately, more and more often, the criticism crosses the First Amendment line and leads to true threats of violence. The rise in threats against federal officials risks the possibility that threatening language and actions will become normalized.

When frustration or anger over judicial opinions becomes strong enough to motivate Americans to desire to threaten to commit violence against federal judicial officials, they must be deterred from doing so. "You cannot have a functioning independent judiciary if the physical security of judges and their families is at risk."[2]

The new threat landscape has caused public officials to change the way they perform their duties, and has had an impact on individuals' willingness to perform public service.[3] The defendant's threat against a sitting federal judge was based on the performance of the judge's duties. This striking example of disrespect and contempt toward judicial authority requires an appropriate sanction as punishment.

The effective functioning of the United States requires a respect for, and adherence to, the rule of law. Without it, the government is unable to "establish Justice, insure domestic Tranquility," or "promote the general Welfare,"—three of the five objectives outlined in the preamble to the U.S. Constitution.[4]

---

[2] Chief U.S. District Judge Timothy Corrigan, Middle District of Florida, quoted in *Federal judges grapple with escalating threats*, THE FLORIDA BAR NEWS p. 7, July 2024.
[3] *See*, *'We'll See You at Your House': How Fear and Menace are Transforming Politics*, Danny Hakim, Ken Bensinger, and Eileen Sullivan, NEW YORK TIMES, May 19, 2024, available at: https://www.nytimes.com/2024/05/19/us/politics/political-violence.html
[4] U.S. CONST., Preamble.

The serious nature of the defendant's violent threat against a federal judge and the judge's family cries out for a meaningful sentence of imprisonment to afford effective general deterrence. The public needs to recognize that threatening government officials will result in a serious sentence of imprisonment.

## IV. <u>CONCLUSION</u>

The defendant's threat against a United States District Court Judge's family was based on the performance of the judge's official duties. This striking example of disrespect and contempt toward judicial authority, and toward the rule of law more broadly, requires an appropriate sanction as punishment. A sentence within the guidelines range is sufficient, but not greater than necessary to achieve the goals of sentencing, including the need to provide adequate deterrence against future criminal conduct.

                                        Respectfully submitted,

                                        ROGER B. HANDBERG
                                        United States Attorney

By:   <u>*/s/ Joseph H. Wheeler, III*</u>
       Joseph H. Wheeler, III
       Special Assistant United States Attorney
       Florida Bar No. 87451
       400 N. Tampa St., Ste. 3200
       Tampa, FL 33602-4798
       Telephone: (813) 274-6000
       Facsimile: (813) 274-6358
       E-mail: Joseph.Wheeler2@usdoj.gov

U.S. v. Stephen Jay Thorn                                Case No. 8:23-CR-361-WFJ-CPT

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

 

*/s/ Joseph H. Wheeler, III*
Joseph H. Wheeler, III
Special Assistant United States Attorney
Florida Bar No. 87451
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Joseph.Wheeler2@usdoj.gov